## HART et al. v. LEWIS et ux.

No. 29336.   May 21, 1940.

Rehearing Denied June 11, 1940.

*103 P. 2d 65.*

Melton, McElroy & Vaughn, of Chickasha, for plaintiff in error W. C. Hart.

Butler, Brown & Rinehart, of Oklahoma City, and Mitchell & Mitchell, of Clinton, for plaintiff in error Chickasha Cotton Oil Company.

Meacham, Meacham & Meacham, of Clinton, for defendants in error.

HURST, J. This action was brought by A. C. Lewis and Beatrice Lewis against W. C. Hart and Chickasha Cotton Oil Company for damages for the wrongful death of their six-year-old boy. The trial court overruled the defendants' demurrers to the evidence and motions for directed verdict, and from a judgment for plaintiffs on the verdict, defendants appeal.

1. The first contention is that the evidence was insufficient to show primary negligence on the part of defendant Hart, local manager of the gin of defendant Chickasha Cotton Oil Company at Weatherford, or that his act was the proximate cause of the boy's death. This necessitates a brief review of the evidence. The fact that the boy was killed in the gin office by a bullet from an automatic pistol owned by or under the control of defendant Hart is not disputed. But the evidence offered by the respective parties relating to his presence in the office, and the manner in which he was killed, is widely divergent.

For the plaintiff, it tends to show that the Lewis boy and Manley Bell, another colored boy about eleven years of age, had gone to the gin to buy feed, and that while they were engaged in playing marbles just outside they were joined by Hart; that after playing marbles with them for a while, the manager went into the office and called to the boys to come in, and the boys followed; that the manager took the pistol out of a desk

drawer where it was kept and began to clean it; that while so doing it was discharged, and the boys ran out; that Hart called them back, assuring them he would not hurt them; that he then took the magazine out of the pistol, and laid the latter on the desk, or counter; that while Hart was working with the magazine Manley Bell put his hand on the pistol and in some way it was discharged, causing the Lewis boy's death. Plaintiff A. C. Lewis testified that a short time prior to the accident he was in the gin office trying to obtain employment, and on that occasion Hart took the pistol out of the desk, and that Mr. Wilson, a district manager of the defendant company, told Hart to get the pistol cleaned up, as the ginning season was coming on and there would be money in the office at night.

For the defendants the proof tended to show that after the marble game the boys followed Hart into the office, and he ordered them out, telling them that the pistol might go off; that the pistol had nothing to do with the business, being one which Hart had taken from his son a few years before and kept in his desk thereafter. Hart testified that neither of the boys was in the office when he placed the pistol on the desk. He explained the cleaning of the pistol by stating that in the first part of the season any gin manager naturally cleans up the entire office for the season, and cleans up the machinery also. Both he and the district manager Wilson denied the testimony of A. C. Lewis as to the conversation between them in reference to cleaning up the pistol. Defendants also showed that the counter or desk on which the pistol lay was higher than the Lewis boy's head, and that Manley Bell was unusually intelligent for a boy of his years, and that just before the shot was fired Hart heard him say "stick em up," and that Hart turned around when the shot was fired and Manley was putting the pistol on the desk. Hart denied that Manley Bell came to the gin for feed, or that he invited the two boys into the office. He also denied that either Wilson or any other company official knew that the pistol was in his possession, or had ever given him any instructions concerning it.

Defendants challenge the sufficiency of the evidence to prove primary negligence or proximate cause, for the reason that the boys were trespassers, or at most licensees, and that the degree of care required of defendants in such case was, if trespassers, not to wantonly or willfully injure them, and if licensees, to use ordinary care to protect them from injury, citing Midland Valley Railway Co. v. Kellogg, 106 Okla. 237, 233 P. 716, Julian v. Sinclair Oil & Gas Co., 168 Okla. 192, 32 P. 2d 31, and other cases to the same effect. They also contend that the evidence does not show that Hart was acting within the scope of his authority, and that the act of Manley Bell in discharging the pistol was an intervening efficient cause of the injury, and was really the proximate cause thereof. Since defendants offered evidence after the overruling of their demurrers to plaintiff's evidence, the case must be considered on all the evidence. Mohrman v. Paxton, 172 Okla. 389, 44 P. 2d 926. Such consideration involves the evidence tending to support the verdict, with the inferences reasonably to be drawn therefrom, but rejecting all the evidence of defendants in conflict therewith. Tull v. Milligan, 173 Okla. 131, 48 P. 2d 835; Shell Petroleum Corporation v. Beers, 185 Okla. 331, 91 P. 2d 777.

One in possession or control of a dangerous instrumentality accessible to children of tender age is required by law to exercise the highest degree of care to prevent them from being injured thereby. Shaffer Oil & Refining Co. v. Thomas, 120 Okla. 253, 252 P. 41; Lone Star Gas Co. v. Parsons, 159 Okla. 52, 14 P. 2d 369. And that firearms are an extraordinarily dangerous instrumentality is established beyond question. 68 C. J. 71, 72. This rule has been announced and applied to widely differing facts in many cases. In Brittingham v. Stadiem, 151 N. C. 299, 66 S. E. 128;

Anderson v. Settergren, 100 Minn. 294, 111 N. W. 279, and Gerbino v. Greenhut-Siegel-Cooper Co., 152 N. Y. S. 502, the facts upon which liability was affirmed were in some respects similar to those in the present case, if we assume that the testimony of Hart that Manley Bell fired the shot was correct, in that the negligence of the owner or his agent consisted in permitting the firearms to get into the possession of the minor. And this rule obtains regardless of whether the children are trespassers, if there is a reasonable probability that they may obtain access to such dangerous instrumentality, and injury results to them thereby. Lone Star Gas Co. v. Parsons, supra. An invitee is one who possesses an invitation, express or implied. And the duty of the owner of the premises is an active, positive exercise of ordinary care and caution to prevent injury to an invitee. St. Louis-San Francisco Ry. Co. v. Williams, 176 Okla. 465, 56 P. 2d 815. From the evidence in the present case, the jury would be justified in finding that the boys were invitees. The placing of the loaded pistol within reach of boys of the ages of six to eleven years was not an exercise of the highest degree of care. The factors entering into a determination of whether such an act would be negligence are discussed at length in Lone Star Gas Co. v. Parson, supra, and need not be reiterated here. The evidence was sufficient to justify submitting to the jury the question of whether Hart was negligent, and whether his conduct, if found by the jury to have been negligent, was the negligence also of his employer, and was the proximate cause of the injury. Lone Star Gas Co. v. Parsons, supra. The last-cited case involved the finding of dynamite caps by a six-year-old boy, who gave them to another boy four years of age, who was injured by driving a nail into one. The court stated that one having explosives in his possession was under the highest degree of care to prevent them coming into the hands of children and causing harm to or through them. We consider that rule applicable here, and hold that whether the act of Hart was the proximate cause of the injury was properly submitted to the jury. The trial court properly denied the motions of defendants for a directed verdict.

What we have said above disposes of the second contention urged by defendants, that the verdict and judgment were not sustained by sufficient evidence and were contrary to law.

2. Defendants next contend that the trial court erred in giving to the jury certain instructions, and in refusing to give requested instructions. Without analyzing in detail each instruction assailed, we deem it sufficient to state that in their entirety the instructions given by the trial court were substantially correct, and that while one or two of them were to some extent incomplete technically, or as abstract statements of the law, still they fairly presented to the jury the correct principles of law to be applied to the facts as developed by the evidence. The requested instructions of defendants were in most cases covered by instructions given, and the others were not proper in view of the nature of the case. The jury was instructed on the theory that they must find that the defendant Hart was acting within the scope of his authority before they could return a verdict against the defendant Chickasha Cotton Oil Company. The jury was also instructed that they could not return a verdict against either defendant unless they found that the boys were in the gin office by invitation and encouragement of defendant Hart, an instruction more favorable to defendants than they were entitled to in view of the defendants' evidence tending to show that the boys were trespassers. The argument of the defendants that the court did not instruct on their theory that the boys were trespassers is without merit. Helmerick & Payne v. Manley, 176 Okla. 246, 54 P. 2d 1088. The instruction on the measure of damages did not limit the pecuniary loss to the parents to the time at which the child would have reached majority. The verdict for $1,348.40, less than one-half of

the amount sued for, cannot be said to be excessive. We do not think the error such as to justify reversal. Lakeview, Inc., v. Davidson, 166 Okla. 171, 26 P. 2d 760; Hale-Halsell Co. v. Webb, 184 Okla. 589, 89 P. 2d 273. In the Lakeview Case this court refused to reverse the trial court for giving a similar instruction.

3. Defendants' final contention is that the judgment should be reversed because of improper argument on the part of plaintiff's attorney. The argument objected to was a statement that the defendant company ought to pay for the killing of the boy as a part of its overhead, and the further statement that the death of the boy was a part of the loss incurred by the company in carrying on its business to make more money. These statements were objected to, and the trial court after each instructed the jury to disregard anything outside of the testimony and the reasonable deductions therefrom. Plaintiff's counsel then said that the defendants were "hollering" because their defense was weak, and upon exception taken said he would try to say something that would please them, and inquired if it would suit them better if he didn't make any speech at all. Exception to these statements was taken on the ground that they were prejudicial, and that the last one was intended for ridicule. Prior to the first remarks complained of, without objection, plaintiff's attorney had stated that he did not want judgment because defendant was a corporation, but that it had killed this little boy, not intentionally, but in carrying on its business, and it ought to pay just as if it had driven on the wrong side of the road and killed somebody.

In view of the instructions of the court when the first statements were objected to, and in view of the size of the verdict, we feel justified in assuming that, even if the argument was objectionable, the jury properly disregarded the statements of counsel. 5 C. J. S. 918. No prejudice is shown to have resulted. The argument will be considered harmless. See City of Tulsa v. Macura, 186 Okla. 674, 100 P. 2d 269.

Affirmed.

WELCH, V. C. J., and OSBORN, DAVISON, and DANNER, JJ., concur.